## BLACK *vs.* KEILEY.

1. No relief will be given in equity to aid a deed alleged to convey a good legal title, and prior in date and registry to the deed against which protection is asked for. Such deed is a good defence at law.

2. No relief can be given in favor of a conveyance not proved to exist, and not admitted in the answer.

3. The defendant offered the complainant that if he would purchase the title of a stranger to a lot lying within his premises, he would pay $100 towards it. The complainant purchased it for $375. *Held*, that the defendant was bound to pay $100, with the interest from the purchase, but could not be compelled to pay more.

4. The defendant was bound to pay the price agreed for this title, even if proved not to be a good title.

5. A defendant cannot have any positive relief on his part touching the subject matter of the suit; the only judgment for him is to refuse the relief prayed for by the complainant.

Argued on bill, answer, and proofs, upon final hearing.

*Mr. Gummere*, for complainant.

*Mr. Pitney*, for defendant.

THE CHANCELLOR.

The case, as stated by the bill, is this : That Caroline Fitch, the wife of Thomas Fitch, was seized of a tract of land at Keyport, in Monmouth county, devised to her by her mother, to be held and enjoyed as her sole and separate estate, free from the control of her said husband, or any future husband, as fully and exclusively as if she were a single woman, with full power to sell, alienate, and dispose of the same by deed or will, as fully and absolutely as if she were a single woman.

That Caroline Fitch, after her mother's death, in 1855, by two deeds, conveyed a lot fifty feet wide by one hundred feet deep, to Alexander Singer, for $300. And the bill charges that these deeds vested the title to this lot in Singer. That in September, 1869, Singer, for $300, conveyed the lot in fee to the complainant, by which he became vested with the title in fee, which still remains in him.

That in 1857, Thomas Fitch and Caroline his wife, conveyed in fee to H. L. the lands devised to her by her mother, with these words after the description of the whole premises by metes and bounds, " excepting and reserving from said premises hereby conveyed " (among other things,) " one lot of seventy-five feet wide and one hundred feet deep, fronting on the northerly line of Broad street, and on the northerly line of said tract sold and conveyed to Singer." That by several mesne conveyances this tract was conveyed by H. L. to the defendant, Keiley. In every mesne conveyance the description of the premises and the exception were in the same words.

That Keiley, after the conveyance by Singer to the complainant, called on the complainant, and agreed to purchase this lot at a price agreed upon, but which is not stated in the bill. This contract Keiley refused to perform, and has not performed. That Keiley afterwards procured a quit-claim deed from Fitch and wife for the Singer lot, and gives out and pretends that the deed to Singer was signed only by Mrs. Fitch, and not by her husband, and is void.

The bill avers that the deed to Singer is valid, and conveyed the title, and that the deed to Keiley from Fitch and wife is void, but nowhere states whether the deed to Singer was signed by Mr. Fitch or not.

The relief prayed for is, 1. That the deed from Fitch and wife to Keiley may be declared void, and that Keiley be decreed to give up the same—to release the premises to the complainant; that he be perpetually enjoined from claiming title under the same, and that the title of the complainant be declared valid : Or, 2. That the defendant be decreed to pay to the complainant $300, the consideration paid by Singer to Mrs. Fitch for the lot, with interest, and that this amount be declared an encumbrance on this lot by holding the deed of Mrs. Fitch an appointment or charge of it on her separate estate : Or, 3. That the amount of $300 paid by the complainant for the Singer title may be decreed to be paid by the defendant, and declared a lien upon the property. And lastly, the general prayer for relief.

If the title conveyed to Singer is a good legal title, as is repeatedly alleged in the bill, as it is prior in date and registry to the date of the deed to Keiley, there can be no claim to any relief in equity ; it is a complete defence at law. But were this not so, no relief can be had in this suit for its protection, because it does not appear that there ever was such a deed or deeds to Singer. The answer in the third paragraph expressly denies all knowledge of any such deed except from hearsay, and requires the complainant to make proof thereof. And no inference as to the existence of such conveyance can be taken from paragraph twenty-nine, in which he denies that the husband of Mrs. Fitch joined in said supposed conveyance, because he carefully mentions it as a supposed conveyance. This does not waive the call for proof. No such conveyance, or any evidence of its existence, is found among the exhibits or proofs in the case. And no relief can be granted founded on its existence.

There is no proof that Keiley agreed to purchase, for any sum, the title of the complainant to the Singer lot, after the

complainant had purchased it. But there is proof, and the fact is admitted by the answer, that after Keiley was informed that Singer claimed this lot, which was located very injuriously in the middle of his tract, he urged the complainant to buy in the Singer claim for him; that he claimed that the complainant and the other heirs, and the executor of complainant's father, Job Black, who had sold the tract to Keiley as enclosed by fences, neither of the party knowing that this excepted Singer lot laid within the fences, ought, in equity, to buy in that title for him; that Keiley offered, if he would do it, to pay $100 towards it, and the complainant offered to do it if Keiley would pay half the expense. No agreement was made nearer than these two offers, but in this situation of the negotiation the complainant purchased the Singer title for $300, and incurred expenses to the amount of $75 in making the purchase.

I think that this may be deemed a contract to purchase the Singer title of the complainant for $100. There is no proof of any agreement on the part of Keiley to pay anything more for it. That he afterwards offered $375 for it, does not constitute a contract to purchase it at that price, as this offer was refused by the complainant. Keiley had a right to withdraw it when he found that the complainant did not have the legal title.

But the agreement to pay $100 for the Singer title he was bound by, even if that title was bad. He and the complainant, alarmed by the report of the Singer title, both agreed to purchase it without examining into its goodness. The complainant acted upon faith of his promise, and paid out his money for this title, and Keiley is bound to repay him to the extent of his agreement. This being the only ground of relief stated in the bill that is sustained by the proof, a decree can be made under the general prayer for relief.

There can be no decree for relief under the general prayer, unless warranted by facts set forth in the bill. The fact that the complainant had acquired the Singer title is stated in the bill, as also the fact that Keiley agreed to purchase it for a

stated price. No contract in writing is set forth. That is not necessary unless the statute of frauds is pleaded. The answer denies any contract. It is necessary to prove a contract in writing, or one in part performance, so as to be taken out of the statute. The answer can admit one in writing, or one in part performed. The answer here admits the agreement to pay $100 towards the expense if the Singer title should be purchased, and the evidence shows performance. That the amount of the price to be paid differed from that set forth in the bill, would be no fatal variance; nor does proof of a fixed price create a variance from a contract set forth, without stating the price.

The agreement to pay the complainant $100 towards buying in the Singer title did not prevent the defendant from buying the legal title wherever he found it to be, or make such purchase a fraud on the complainant, or give the complainant any right to claim that title as purchased for his benefit. The only duty of Keiley is to perform his agreement and pay the amount agreed by him. There must be a decree that the defendant Keiley, upon the tender of a good and sufficient deed by the complainant to him, conveying the title to the Singer lot as it was conveyed to him by Alexander Singer and wife, pay to the complainant $100, with lawful interest from April 7th, 1869, and the complainant's costs of this suit. All other relief sought by the complainant's bill is denied.

No relief can be granted to a defendant by any positive decree, and the complainant cannot be decreed in this suit to hold the title to the Singer lot as trustee for the defendant, as claimed by his counsel on the argument. If he holds, as he claims, the legal title by the Singer deed, he need not tender the title, and the defendant will be put to his suit to obtain his right, if any he have. If, on the other hand, the complainant only holds under the Singer deed an equitable title, or the right to have the legal title conveyed to him, the decree refusing that relief, will leave the legal title in the defendant, free from all equity of the complainant.